UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MORTAR NET USA, LTD., | |
| Plaintiff, | Case No. 2:12-CV-215 JVB |
| v. | |
| HOHMANN & BARNARD, INC. | |
| Defendant. | |
| MORTAR NET USA, LTD., | |
| Plaintiff, | Case No. 2:12-CV-252 JVB |
| v. | |
| MASONRY REINFORCING CORPORATION OF AMERICA, | |
| Defendant. | |
| MORTAR NET USA, LTD., | |
| Plaintiff, | Case No. 2:12-CV-148 JVB |
| v. | |
| KEENE BUILDING PRODUCT COMPANY, | |
| Defendant. | |

**OPINION AND ORDER**

The issue before the Court is whether Plaintiff Mortar Net USA is entitled to trademark protection for its dovetail shaped mortar and debris collection device. Its patents expired in April

1

2012, after which Defendants Hohmann & Barnard, Inc., Keene Building Products Co., and Masonry Reinforcing Corporation of America began using the dovetail design in their products, arguing that the design is functional and is not entitled to trademark protection. Plaintiff sued each of the Defendants separately, contending that its former patents do not preclude trademark protection, its design is regarded with tremendous respect in the industry, and Defendants could use alternative shapes and designs to accomplish their purpose. Defendants moved for summary judgment. Because each of their motions addresses the same issues, the Court consolidated all three cases for the purpose of summary judgment ruling.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**A. Material Facts**

**(1)** *Background of the Dovetail Design*

Mortar Net USA's founder, Tom Sourlis, invented and patented the dovetail shaped device in 1993. (Ex. A-3, DE 43-4, at 2.) In building a cavity wall structure, workers construct an exterior wall of bricks with a space, or inner cavity, in between the brick wall and an interior wall. (Ex. A-3, DE 43-4, at 8.) They also create outlets called "weep holes" in the bottom layer of bricks of the exterior wall to allow water and moisture to escape from between the walls. (Ex. A-3, Dec 43-4, at 8; Decl. Sourlis ¶ 5.) A problem arose for Mr. Sourlis and others in the industry when wet mortar and other debris fell into the gap, clogging the weep hole and causing damage to the wall because of the moisture build-up, as well as the growth of harmful mold. (Ex. A-7, DE 43-8.)

To solve this problem, Mr. Sourlis invented and developed a "multi-tiered, or multilevel, product with a randomly oriented mesh, which can be placed in a wall cavity structure so as to catch fresh mortar that typically falls into the cavity, as well as catch other debris." (Decl. Sourlis ¶ 5.) This mesh device allows water to pass through and exit through the weep holes and is strong enough to stop mortar from clogging the weep holes. (Decl. Sourlis ¶ 6.) The multi-tiered design also ensures that the mortar does not pond or form a solid layer once it rests on the mesh.[1] (*Id.*) Mr. Sourlis chose and patented a dovetail design—also known as a trapezoidal shape or keystone configuration—because the dovetail is a well-known figure in architecture and the arts and is easily recognizable to architects. (Decl. Sourlis ¶ 7.) After its last patent expired in April 2012, Defendants began selling similar mortar and debris-collection devices, and Mortar Net filed suit.

**(2)** *Mortar Net's Expired Patents*

Mr. Sourlis patented the dovetail design in four utility patents:

- 5,230,189;
- 5,343,661;
- 5,937,594; and
- RE36,676.

(Ex. A-3, A-4, A-5, and A-6.)

The Mortar Net Patents describe various features of the dovetail device:

---

[1] To see the demonstration of the product, go to http://www.youtube.com/watch?v=ZHvBUxIscnk

3

> The dove-tailed cutouts . . . yield protrusions which help break up the mortar and debris that collect on the collection device surface. The overhangs formed by the slanted sides . . . are intended to assure that gaps remain in the fallen mortar and debris for water to progress to the body . . . .

(Ex. A-3, at 5:49-60; A-4, at 5:55-65; A-5, at 5:53-64; and A-6, at 5:41-51.) The "Summary of the Invention" section elaborates on the design:

> [T]he improved mortar and debris collection device of this invention comprises . . . a water-permeable body formed with circuitous (non-linear) pathways there through, which body can be readily placed within a cavity wall construction. . . . Another embodiment contemplates laterally extending projections formed on a supporting board which form the circuitous path.
> . . . .
> A preferred form of the collection device has upwardly extending protrusions, such as protrusions defining overhangs as well as steps, which serve to break up mortar and debris falling on top of the collection device. This prevents ponding of the material on the surface of the collection device.

(Ex. A-3, at 2:59-3:20; A-4, at 2:62-3:23; A-5, at 2:63-3:24; and A-6, at 2:58-3:18.) In another utility patent application, Mr. Sourlis described the purpose of the overhangs and slanted sides of the dovetail design: "The overhangs formed by the slanted side . . . are intended to assure that gaps remain in fallen mortar and debris for water to progress to the body . . . ." (Ex. A-22.)


**(3)** *Mortar Net's Advertisements*

Mortar Net's advertisements have also described the purpose of the dovetail shape. In a video, Mortar Net endorses its dovetail shape by saying that "the difference is in the cut":

> Mortar Net products are far more effective than any other moisture management solution. And . . . the difference is in the cut. . . . Mortar Net prevents mortar droppings from clogging the weep holes in two ways. First, it catches and suspends mortar well-above the weep hole openings, so there's no chance of blockage. Second, its unique shape and its 90% open mesh prevent mortar from forming a solid dam by breaking mortar droppings up into two levels while providing plenty of open space by which moisture can easily migrate to the weeps. . . . Only Mortar Net has a unique patented shape that makes it impossible for mortar droppings to form a solid dam. That's why the difference is in the cut.

4

(Ex. A-13, DE 43-14; http://www.youtube.com/watch?v=ZHvBUxIscnk (last visited on September 26, 2013.) On its website, Mortar Net touts its "patented trapezoidal shape" and explains that this particular shape "prevents mortar damming so moisture can always flow out of the cavity." (Ex. A-9, 43-10; Ex. A-8, DE 43-9; Ex. A-1, DE 43-2.) Another website advertisement goes on to explain that "Mortar Net's patented 'dovetail' shape captures mortar droppings and other debris, permanently suspending them above the weep holes." (Ex. A-7, DE 43-8; A-14, DE 43-15.)

**B. Discussion**

In their motions for summary judgment, Defendants maintain that Plaintiff Mortar Net may not claim trade dress protections for its dovetail shaped mortar collection device. They submit that the Seventh Circuit, in *Georgia-Pacific Consumer Products LP v. Kimberly-Clark Corporation*, 647 F.3d 723 (7th Cir. 2011), foreclosed Plaintiff's claims by making clear that a functional design cannot be protected as a registered trademark, even if there are alternative designs available.

Plaintiff responds that its dovetail design is useful, but the shape is merely aesthetical, not functional, and that many other shapes, some of which are disclosed in the patents in question, are available. Moreover, Plaintiff argues that, over the years, the dovetail design has become so associated with Plaintiff that it has obtained the force of a trademark.

This case revolves around whether Mortar Net's dovetail design is "functional," because "trade dress protection may not be claimed for product features that are functional." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001). The Seventh Circuit looks to five factors to determine functionality:

> (1) the existence of a utility patent, expired or unexpired, that involves or describes the functionality of an item's design element; (2) the utilitarian properties of the item's unpatented design elements; (3) advertising of the item that touts the utilitarian advantages of the item's design elements; (4) the dearth of, or difficulty in creating, alternative designs for the item's purpose; [and] (5) the effect of the design feature on an item's quality or cost.

*Georgia-Pacific,* 647 F.3d 723, 727 (7th Cir. 2011) (quoting *Specialized Seating, Inc. v. Greenwich Industries, L.P.*, 472 F. Supp. 2d 999, 1011 (N.D. Ill. 2007)). A design feature is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices, Inc.*, 532 U.S. at 32. The existence of an expired utility patent is "strong evidence that the features therein claimed are functional." *Id*. at 29. "Where the expired patent claimed the features in question, one who seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device." *Id*. at 29–30. In appropriate cases, functionality can be determined on summary judgment. *Georgia Pacific*, 647 F.3d at 727.

Defendants have provided strong evidence that the dovetail design of Plaintiff's product is functional. In fact, the dovetail contour is distinctively claimed in Claim 3 of the 5,230,189 and RE36,676 Patents[2] and is specified in the detailed description of embodiments and drawings of all three patents in question. Although Claim 3 is a dependent claim, the functional nature of the dovetail design is not undermined. Rather, the detailed descriptions of the embodiments and the initial drawings reveal what Plaintiff was quick to note in its later advertisement: "the patented dovetail shape." (Dfs.' Ex. A-7, DE 43-8, at 2.) The Court finds that Defendants have sufficiently shown that the dovetail shape, even if not the only possible contour, is the "essential feature" and "central advance" of Plaintiff's patents. *See TrafFix Devices, Inc*., 532 U.S. at 30.

---

[2] "3. The collection device of claim 2 wherein said body has an upper surface with a repeating dove-tailed contour along its long axis." (RE36,676 Patent at 7, lns. 62—64.)

Among other things, Mortar Net advertises its product with the slogan, "the difference is in the cut." Plaintiff claims this phrase is generic referring to the difference between its multi-tiered product, which is cut from fibrous mesh, and other straight-strip products, which are not cut in the same manner. (Pl.'s Resp. at 22.) But Defendants are quick to point to a YouTube video where Plaintiff touts its product stating: "only Mortar Net has a unique patented shape that makes it impossible for mortar droppings to form a solid dam. That's why we say the difference is in the cut." (Pl.'s Ex. A-13.)

Moreover, there are multiple references in Plaintiff's advertisements that the dovetail design makes its product superior to the competitor's products:

- "Mortar Net's patented 'dovetail' shape captures water droppings and other debris, permanently suspending them above the weep holes." (Dfs.' Ex. A-7, DE 43-8, at 2.)
- Mortar Net is the patented dovetail shaped material, placed behind the weep course of a masonry wall . . . . Its shape, combined with a 90% open weave construction, allows water and air to rapidly and easily move through the Mortar Net material to the weeps." (Dfs.' Ex. A-10, DE 43-11, at 2.)
- Mortar Net USA's masonry drainage and ventilation systems surpass all other methods . . . . Created by the masonry experts who brought you the proven patented trapezoidal shape---the industry standard for over 20 years---and now the industry innovator with a unitized flashing system." (Dfs.'Ex. A-8, DE 30-9, at 1.)
- "[I]ts patented trapezoidal shape captures mortar droppings on two levels so they can't form a solid dam." (Dfs. Ex. A-9, DE 43-10 at 2.)

- "Sourlis knows how expensive it is to tear apart a wall, clear the cavity and rebuild it. As a response to seeing what water damage can do to a building, Sourlis invented Mortar Net and patented its unique dovetail shape." (Dfs.' Ex. B-1, DE 43-29, at 22.)

In arguing that its product's trapezoidal shape is not functional, Plaintiff submits evidence from an independent federally certified laboratory that various other shapes work just as well in preventing mortar and debris from blocking the weep holes. Plaintiff also presents evidence that these alternative designs do not significantly affect either the quality or the cost of the product. Plaintiff thus argues that Defendants' motions for summary judgment fail in light of the last two factors of the *Georgia-Pacific* balancing test.

But Plaintiff overlooks the fact that "the design in question does not have to be the *only* possible design to be functional; rather, it is functional if it 'represents *one of many solutions* to a problem.'" *Georgia-Pacific*, 647 F.3d at 731. Because Defendants have produced strong evidence that the dovetail shape is functional, "the fact that there are numerous alternative designs does not, on its own, render the design nonfuctional or incidental." *Id*. Likewise, Plaintiff's exhortation of its trapezoidal-shaped product as the industry standard for over 20 years belies its current claim that other shapes will do just as well.[3]

## C. Conclusion

The Court finds that Plaintiff has failed in its burden of proof to show that the trapezoidal shape of its product is not functional. Therefore, the Court grants summary judgment in each

---

[3] Neither Defendants nor Plaintiff have developed an argument regarding the second factor of *Georgia-Pacific*'s functionality test, concerning the utilitarian properties of the item's unpatented design elements. Given the adversarial system in which it operates, the Court does not venture to address this issue on its own.

Defendant's favor on Plaintiff's claims that its dovetail shaped mortar and debris collection device is entitled to trademark protection.

However, because Defendants have not addressed, aside from cursory mention in their briefs, Plaintiff's claims of infringement as to its registered trademarks 3,571,383 and 3,571,384 (Counts 2, 4, and 6 of the Complaint), Defendants' motions for summary judgment on those claims are denied.

The Clerk is ordered to enter this order in all three cases captioned above.

SO ORDERED on September 26, 2013.

    s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE